23 C.C.P.A.(Patents)

### In re GREENSTREET.

**Patent Appeal No. 3603.**

Court of Customs and Patent Appeals.

Dec. 2, 1935.

E. F. Wenderoth, of Washington, D. C. (John E. Lind, of Washington, D. C., of counsel), for appellant.

R. F. Whitehead, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for the Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

GARRETT, Associate Judge.

Appellant's application filed in the United States Patent Office bears the title "For Treatment of Carbonaceous Material."

As finally acted upon, the application carried fifteen claims, numbered 32 to 46, inclusive; No. 46 being for the product produced, and all others being method claims.

The examiner rejected all the claims, citing seven patents as references. The Board of Appeals reversed the examiner as to claims numbered, respectively, 38, 39, and 42, but affirmed as to all others. From so much of the board's decision **as affirmed**

the rejection of the examiner, appeal was taken to this court.

For illustrative purposes we quote appealed claims 32 and 46:

"32. The production of liquid hydrocarbon distillates comprising distilling at relatively low temperatures a mixture of about equal parts by weight of finely divided solid carbonaceous material containing volatile hydrocarbons and a mineral oil having a wide distilling range of temperatures approximating to that of the volatiles in the carbonaceous material under the conditions of the process with an end point of about 380° C. to 400° C."

"46. Liquid hydrocarbon products derived from distillation of finely divided coal with at least an equal quantity of mineral oil of wide distilling range having an end point of about 400°C., characterised by being suitable for cracking and free or substantially free from tar acids and other products of ordinary low or high temperature coal carbonisation."

The decision of the board having eliminated one of the references cited by the examiner, only six remain in the case as it comes before us:

These are:
Trent, 1,512,427, October 21, 1924.
Blythe, 1,512,577, October 21, 1924.
Forwood, 1,523,942, January 20, 1925.
Trent, 1,641,305, September 6, 1927.
Melamid, 1,723,431, August 6, 1929.
Dubbs, 1,868,732, July 26, 1932.

Of these references, the patent to Trent, No. 1,641,305, was regarded by the board as anticipatory "in equivalent steps" of all the method features of appellant's claims. The product claim (No. 46, supra) was rejected upon the patent to Dubbs which accorded with the holding of the examiner.

Broadly, appellant's purpose is to produce hydrocarbon materials, in liquid form, susceptible of use in making liquid fuel, gasoline, and like products, primarily from bituminous coal; more particularly from "the volatile condensible distillate consisting of pitches, tars, tar acids, light and heavy oils plus gases" that result from the destructive distillation of such coal in the production of coke by a distilling process. These pitches, tars, etc., are referred to, at times, in the brief for appellant as "resins." In carrying out his process, use is made of mineral oils in a manner hereinafter more particularly described.

It may here be said parenthetically that appellant does not limit himself to the use of comminuted coals in his process, but recites that other carbonaceous materials, naming many, may be used. Also his specification recites that suitable animal or vegetable oils may be used "instead of or in admixture with mineral oils."

This, however, is not claimed to have any bearing upon the patentability of appellant's process claims, and as to the product claim only coal and mineral oil are prescribed as the raw materials to be distilled.

The brief for appellant explains that the destructive distillation of coal results in two general products, namely, coke and the volatile condensible distillate composed of the "resins," and the application is primarily concerned with the utilization of such "volatile condensible distillate" for the making of a product of the kind above defined.

To do this and to secure a "commercially profitable operation," it is said, in effect, that it is requisite to recover the resins without burning and destroying them by destructive distillation or by any plan of procedure that would burn or destroy them.

The brief then states: "In order to meet all of the above conditions the inventor, who is a noted authority in this field, after months of experimenting and at great expense, found that a mineral oil *having a wide distilling range* should be mixed with coal so as to dissolve the resins that *also have a wide distilling range,* and the inventor also found that a *sufficient percentage in volume of the solvent oil* should be used which would not only be capable of fully dissolving *all* the resins, but which would be in such volume as to carry over mechanically resins dissolved in the oil on distillation. The volatile distillate secured from such mixture when condensed could then be converted into a gasoline of high grade by any well known cracking process." (Italics quoted.)

It is thus to be seen that appellant emphasizes the wide distilling range of the oil which he uses. This limitation is present in each of the claims. There is another limitation which appellant also emphasizes, namely, the use of a mixture of about equal parts by weight of coal and oil. This limitation likewise is found in all the claims.

A careful study of the brief filed on behalf of appellant in connection with the oral argument made before us leads to the conclusion that, notwithstanding appellant has assigned numerous and in some respect complicated, reasons of appeal, his reliance here is upon the alleged error respecting the two foregoing limitations. The decisions of the tribunals of the Patent Office are quite definite in pointing out features present in the different references which were regarded as anticipatory of other limitations in the claims, and we do not find where appellant seriously challenges these particular findings.

Our attention, therefore, will be confined in the main to consideration of the two limitations emphasized as above set forth.

Another parenthetical statement seems necessary, in the interest of clarity, in view of the state of the record before us. The "Statement" of the examiner, following the appeal to the board, contains the following: "Claims 32 to 45 have been further rejected as drawn to new matter, in that the expression, such as occurs in claim 32, line 5, 'boiling point of about 200°C.' has not been found in the original specification."

Examination of the claims as they now read discloses that no one of them contains any reference to a "boiling point of about 200°C." Therefore, while the record as brought to us is silent upon the subject, the natural inference is that the quoted phrase was eliminated by amendment, probably before the final decision by the examiner, or certainly before the decision by the board in which no reference was made to it. We shall proceed upon that theory.

While the decisions of the tribunals of the Patent Office are not so specific and clear in discussing the limitation respecting the "wide distilling range of temperatures" of the oils used in the process as they are in discussing the "equal parts by weight" limitation, nevertheless sufficient appears to convince us that the first-named limitation received consideration by both the examiner and the board, and that it was regarded by them as being in the same category as the second with respect to criticalness.

That the broad conception of distilling coal in oil is not new with appellant is conceded in his specification, and, as is pointed out by the board: "Each of the patents

to Trent, No. 1,512,427 and No. 1,641,305 and the patents to Blythe and Melamid utilize this general principle in subjecting various organic compounds such as those mentioned by applicant as various grades of coal and cellulosic material with mineral hydrocarbons, to distillation."

However, it was also found by the board, following the examiner, that the particular proportions of oil and finely pulverized solids named by appellant are not named in the prior art, but the board concurred with the examiner in holding such proportions not critical in appellant's method.

The board pointed out that appellant's specification is "rather broad in this respect," since it is there stated: "Preferably the oil is used in amount approximately equal to or greater than the amount by weight of fine coal or equivalent carbonaceous material employed in admixture with it, but I do not restrict myself to such amounts; on the one hand I may use less, provided it is sufficient to prevent destructive distillation [of the coal and oil mixture], and on the other hand I may use so much as to render it practicable to stop the distillation short of arriving at a solid residue and to utilize the still fluid residue for other purposes, as for example as a liquid fuel or as a basis for manufacture of such a fuel."

The board then made the same finding in regard to the "particular range of temperature of treating the mixture involved in the method," and, as we interpret its decision, in regard to "the range of distilling temperature of the oil," giving quotations from the specification illustrating the alleged breadth of those respective features.

Our consideration of the references, in the light of the decisions below and the arguments here made, leads us to a state of grave doubt with respect to the correctness of the board's decision upon the question of criticalness as related to the particular limitations under discussion.

While there are broad features of description in appellant's specification, the process claims themselves are limited with much strictness, and our examination of the proportionate quantities of oil, which other patentees prescribe for preferable use, leads us to conclude that their teachings are not sufficiently definite as fairly to anticipate the definite features of appellant's claims. It is doubtless true that appellant was able to arrive at his proportions of carbonaceous material and oil as well as learn the use of oil having a wide distilling range, by experimentation; but invention is not to be denied simply because of that. It seems clear that the prior art cited did not teach either of these things, and appellant having made the discovery, we are of the opinion that his process claims, as limited by their terms, should be allowed.

The several authorities cited in the brief of the solicitor for the Patent Office respecting lack of invention in changing proportions of materials are not felt to be here controlling, under the facts of this case.

As for the product claim (No. 46, supra), we concur in the holding of the board, for the reasons particularly given by the examiner, that it is anticipated by the Dubbs patent.

The decision of the Board of Appeals is affirmed as to claim No. 46, and reversed as to all appealed process claims.